IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 14-cv-2861-WJM

JOHN LAWRENCE WILLIAMS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**

---

    This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff John Lawrence Williams ("Williams") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for supplemental security income benefits and disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Williams was not disabled within the meaning of the Social Security Act. This appeal followed.

    For the reasons set forth below, the ALJ's decision denying Williams's application for supplemental security income benefits and disability benefits is affirmed.

## I. BACKGROUND

    Williams was born on January 24, 1967, and was 43 years old on the alleged disability onset date of June 1, 2010. (Administrative Record ("R.") (ECF No. 9) at 128.) Williams attended two years of college but did not obtain a degree. (R. at 19.) He served in the United States Navy and the Arkansas National Guard and received a

general discharge. (*Id.*)  He has since been employed as a security guard, security supervisor, data entry/accounts payable clerk, data entry processor, and check processor, along with various other office jobs through temporary staffing agencies. (*Id.*)

Williams applied for disability insurance benefits and supplemental security income on January 17, 2012. (R. at 14.)  Williams claimed that he is disabled due to Type I diabetes and gastroparesis,[1] individually or combined. (R. at 176.)  His application was denied on April 13, 2012. (R. at 75–80.)  Williams requested and received a hearing in front of an ALJ, Patricia E. Hartman. (R. at 29, 81.)  On February 25, 2013, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2]

At step one, the ALJ found that Williams had not engaged in substantial gainful activity since June 1, 2010. (R. at 16.)

At step two, the ALJ found that Williams suffered from "the following severe impairments: type I insulin dependent diabetes mellitus, gastroparesis, depression, and marijuana abuse." (*Id.*)

---

[1] "Gastroparesis, also called delayed gastric emptying, is a disorder that slows or stops the movement of food from the stomach to the small intestine." National Institute of Diabetes and Digestive and Kidney Diseases, "Gastroparesis," *at* http://www.niddk.nih.gov/health-information/health-topics/digestive-diseases/gastroparesis/Pages/facts.aspx (last visiting Aug. 14, 2015).

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

At step three, the ALJ found that Williams's impairments, while severe, did not meet or medically equal any of the impairments listed in the Social Security regulations. (R. at 16–18.)

Before proceeding to step four, the ALJ assessed Williams's residual functional capacity ("RFC"). The ALJ concluded that Williams has the RFC

> to perform light work . . . as he can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk 6 hours each in an 8 hour day; and push and pull within his lifting and carrying limits. He cannot climb ladders and scaffolds, work at unprotected heights or around moving mechanical parts. He is limited to work at a maximum SVP of 4 and can interact occasionally with supervisors, coworker[s], and the public.

(R. at 18.) Then, at step four itself, the ALJ concluded that Williams retains the RFC to perform his past work as a security guard and office helper. (R. at 24.) Accordingly, the ALJ found that Williams was not disabled and therefore not entitled to Social Security benefits. (*Id.*)

Williams appealed to the Social Security Appeals Council (R. at 9), which denied review (R. at 1). Williams then filed this action seeking review of the ALJ's February 25, 2013 decision. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a

preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

The vast majority of the ALJ's analysis comes in her assessment of Williams's RFC. (R. at 18–24.) Williams claims that the ALJ, in formulating the RFC, (1) improperly discounted his credibility, (2) improperly discounted certain doctors' opinions, and (3) failed to account for the combined effect of his impairments. (ECF No. 14 at 12–22.)[3] The Court will address each argument in turn.

**A.   Williams's Credibility**

At his hearing before the ALJ, Williams testified that he experienced gastroparesis symptoms (*e.g.*, vomiting, severe abdominal pain) nearly every day. (R. at 41–42.) According to Williams, gastroparesis limits his ability to consume food, which in turn limits his ability to control his blood sugar levels, thereby exacerbating his diabetes. (R. at 45, 49–50.) The ALJ, however, largely discredited Williams's testimony because she found that causation ran in the other direction: Williams's

---

[3] All ECF page citations are to the page number in the ECF header, which does not always match the page number inserted by the filer's word processing program.

gastroparesis was not exacerbating his diabetes, but rather his unwillingness to monitor his diabetes properly (*e.g.*, regular blood-sugar tests) was exacerbating his gastroparesis. (R. at 20.)

An ALJ must consider four factors "before [he or she] may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). Those factors are: "(1) whether the treatment at issue would restore [the] claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Id.* (quoting *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)). Williams argues that the ALJ did not consider the *Thompson*/*Frey* factors. (ECF No. 14 at 12–14, 21.)

The Commissioner makes no argument that the ALJ *did* consider these factors. (*See* ECF No. 15 at 12–17.) Rather, the Commissioner argues that the *Thompson*/*Frey* factors only apply when an individual (a) already qualifies as disabled, but (b) refuses a treatment that could restore his or her ability to work. (*Id.* at 12–13.) The Commissioner cites *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000), in support. (*Id.* at 13.) On its face, *Qualls* indeed appears to support the Commissioner's position, but *Qualls* only distinguishes *Frey*, not *Thompson*. *See Qualls*, 206 F.3d at 1372. Like this case, *Thompson* was indisputably a situation in which the ALJ made a credibility judgment based on the claimant's choice not to seek medical treatment or follow medical advice. *See Thompson*, 987 F.2d at 1489 ("The ALJ found Ms. Thompson's allegations of disabling pain were not credible primarily because she was neither

pursuing medical treatment nor taking prescription medicine."). *Thompson* also indisputably required the ALJ to consider the *Frey* factors before making such a credibility judgment. *Id.* at 1490.

This Court has not had occasion to resolve the potential conflict between *Qualls* and *Thompson*. However, when faced with the same issue, the District of Kansas fell back on the established principle that a later Tenth Circuit panel cannot overrule an earlier panel, and therefore concluded that *Thompson* continues to control. *Goodwin v. Barnhart*, 195 F. Supp. 2d 1293, 1295–96 (D. Kan. 2002). This Court agrees and rejects the Commissioner's argument that *Qualls* obviates the need to weigh the *Thompson*/*Frey* factors.

Given the Commissioner's failure to argue that the ALJ in fact considered those factors, Williams invites this Court to deem it conceded that the ALJ erred by not considering them. (ECF No. 16 at 3–4.) The Court agrees that the ALJ did not quote the *Thompson*/*Frey* factors or show any explicit awareness of the need to consider them. To the extent the ALJ erred, however, the Court finds the error to be harmless because the ALJ's credibility assessment relied on substantial evidence going to each of the four *Thompson*/*Frey* factors, as explained below. *See Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (applying harmless error in a Social Security case where error was technical and substantial evidence supported the outcome). Thus, the ALJ properly supported her conclusion that Williams's testimony about the limiting effects of his symptoms was not entirely credible because Williams's untreated diabetes was the cause of his gastroparesis symptoms, rather than the other way around.

Concerning the first and fourth *Thompson*/*Frey* factors—whether better diabetes treatment would restore Williams's ability to work and whether his neglect of that treatment is without justifiable excuse—the ALJ noted at least two doctors' treatment reports explicitly stating that Williams's gastroparesis symptoms would or did improve with better attention to his diabetes. (R. at 21 (citing Ex. 3F at 165 [R. at 411]); R. at 22 (citing Ex. 5F at 55 [R. at 807]).)

Concerning the second and third *Thompson*/*Frey* factors—whether diabetes treatment was prescribed and refused—the ALJ exhaustively documented the many times Williams's doctors encouraged him to monitor his blood-sugar levels regularly and take steps to keep those levels within an appropriate range. (R. at 20–24.) The ALJ also documented the many times Williams ignored that advice and failed to check his blood sugar for several days, leading to numerous emergency room visits at which Williams complained of the same symptoms he attributes to gastroparesis, which symptoms were treated by restoring his blood sugar to normal levels. (*Id.*)

Given the foregoing, the Court concludes that the ALJ properly, if unwittingly, considered the *Thompson*/*Frey* factors. The ALJ's choice to discredit Williams's testimony was therefore supported by substantial evidence going to the appropriate considerations.

**B.     Weight Given to Treating Physician's Report**

On December 21, 2011, Williams's treating physician, Dr. Samuel Richesin, submitted a Med-9 report (a form promulgated by the state of Colorado for determining Aid to the Needy Disabled eligibility). (R. at 245–46.) Dr. Richesin diagnosed Williams

7

with (1) diabetes, (2) "nausea and vomiting-chronic," and (3) anxiety/depression. (R. at 246.) In response to the question, "What symptoms or problems need to be alleviated to allow this person to be employable?", Dr. Richesin wrote, "Improvement in chronic nausea and vomiting. Also needs to have [diabetes] more closely monitored/ controlled." (*Id.*) Dr. Richesin checked the box next to the statement, "I find that this individual has been or will be disabled to the extent they are unable to work at any job for a total period of six (6) or more months due to a physical or mental impairment that is disabling." (R. at 245.)

The ALJ gave Dr. Richesin's opinion "no weight" (R. at 23) for three reasons, of which Williams challenges two. The Court will nonetheless address all three reasons, to determine if the ALJ's overall conclusion is properly supported.

First, the ALJ discounted Dr. Richesin's report because its "posited time period of 6 months does not satisfy the threshold 12 month duration requirement set forth in the regulations to establish the existence of a severe impairment (20 C.F.R. 404.1509 & 416.909)." (*Id.*) Williams argues that this "overlook[s] Dr. Richesin's contemporaneous clinical exam notation that it was for '12 mos coverage.'" (ECF No. 14 at 15 (citing R. at 248).) But Williams does not explain what this means, nor is the meaning evident on the face of the clinical exam notation. The Court therefore rejects this argument.[4]

---

[4] Williams also points to a later Med-9 examination by Dr. Sarah Christensen in which Dr. Christensen checked the box next to the statement, "I find that this individual has been or will be totally and permanently disabled to the extent they are unable to work at any job due to a physical or mental impairment." (R. at 866.) The ALJ did not consider Dr. Christensen's report because Dr. Christensen's Med-9 examination took place after the ALJ issued her decision. Nonetheless, given that Dr. Christensen's report is entirely conclusory (with no diagnoses or clinical discussion), the Court does not find that its inclusion in the record tips the balance such that the evidence supporting the ALJ's conclusions can no longer be considered "substantial."

Second, the ALJ concluded that Dr. Richesin's report was "unsupported by objective medical signs and findings and is inconsistent with the medical evidence, which shows remission of the claimant's diabetic symptoms when he is compliant with prescribed treatment. . . . Dr. Richesi[n] himself stated that the claimant needed to more closely monitor and control his diabetes . . . ." (R. at 23.) Williams does not directly challenge this conclusion, although he obviously disagrees with it, as shown by his insistence that his gastroparesis interferes with his diabetic treatment. (*See* ECF No. 14 at 13–14.) However, as discussed in Part III.A, *supra*, substantial evidence exists in the record to support the ALJ's decision to reject this position. Thus, the Court finds no error in the ALJ's second reason for rejecting Dr. Richesin's report.

Third, the ALJ found no other support for Dr. Richesin's anxiety/depression diagnosis: "No diagnosis of anxiety is present in the file, no mental status examinations document depression, and no evidence that depression poses limitations beyond those set forth in the residual functional capacity [is] present in the record." (R. at 23.) Williams counters that the record contains numerous instances of medical professionals addressing and treating symptoms of anxiety and depression. (ECF No. 14 at 15–16.)

The Court agrees with Williams that "Dr. Richesin's opinion [regarding anxiety and depression] was consistent with the evidence," and the ALJ erred in this respect. (*Id.* at 16.) This error is harmless, however, because the ALJ's previous two reasons are enough on their own to sustain the ALJ's decision to discredit Dr. Richesin's report. *Cf. Butler v. Astrue*, 410 F. App'x 137, 139 (10th Cir. 2011) ("We agree with Mr. Butler that it is not clear why the ALJ thought his testimony . . . was contradictory. But we

need not address this issue, because the ALJ's other reasons provide substantial evidence to support the credibility determination.").

Given the foregoing, the Court finds no reason to reverse the ALJ's opinion based on her failure to give weight to Dr. Richesin's report.

**C.     Consideration of Mental Health, and of the Combined Effect of Impairments**

Williams further claims that the ALJ "impermissibly substituted her judgment over [that of] the treating medical sources regarding [his] mental impairments." (ECF No. 14 at 16.) The ALJ made three direct statements about those mental impairments:

- "In social functioning, the claimant has moderate difficulties. The claimant testified that he does not go out due to abdominal pain, nausea[,] and vomiting. He states that he interacts very little with his wife because he is irritable. These allegations, although based in part on his physical condition, support a finding of moderate limitation and social functioning." (R. at 17.)

- "With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reported difficulty concentrating due to pain and vomiting. The Administrative Law Judge finds that his functioning in this domain is likely affected by a combination of physical symptoms and mild depression." (*Id.*)

- "The claimant reported that his physical condition has caused depression. He has taken anti-depressant medication [for] about 10 years. He does not go to therapy and has never been hospitalized for depression. He has no memory problems and no difficulty concentrating unless he is in pain.

>However, he does have problems getting along with other people and has limited interaction with his wife because his pain makes him irritable."

(R. at 19.)

The Court does not see any error. The ALJ concluded that Williams's mental impairments primarily resulted from his physical symptoms—a conclusion amply supported by the record, including Williams's own testimony. (*See, e.g.*, R. at 44–45 (testifying that his pain limits his ability to concentrate).) As already noted, the ALJ also concluded that Williams's physical symptoms primarily result from his unwillingness to closely follow a diabetes treatment regimen. Thus, the ALJ gave Williams's mental impairments appropriate consideration and weight.

For the same reasons, there is no merit to Williams's argument that the ALJ failed to properly consider the combined effect of all impairments, physical and mental. (ECF No. 14 at 20–21.) The ALJ's conclusions about Williams's physical and mental limitations are inseparably connected. The Court sees no basis for reversal.[5]

## IV. CONCLUSION

For the reasons stated above, the ALJ's decision is AFFIRMED. The Clerk shall enter judgment in favor of the Commissioner and shall terminate this case.

---

[5] Of course, if Williams conscientiously follows a prescribed diabetes treatment regimen and his gastroparesis does not improve, nothing prevents him from filing a new disability application.

Dated this 20th day of August, 2015.

BY THE COURT:

_____
William J. Martinez
United States District Judge